767 So.2d 965 (2000)
Mary BEL, Individually and on Behalf of the Estate of Her Husband, Douglas Bel; and Linda B. Mire and Carolyn B. Heard
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Allstate Insurance Company, Regal Insurance Company, Craig Lewis, Individually and d/b/a Craig Lewis State Farm Agency.
No. 99 CA 1922.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*966 Craig J. Robichaux, Mandeville, Counsel for plaintiffs/appellants, Mary Bel, Linda Mire and Carolyn Heard.
Adrianne L. Baumgartner, Covington, Counsel for defendant/appellee, State Farm Mutual Insurance Co.
Barbara Stavis Wolf, Covington, Counsel for defendant, Allstate Insurance Company.
Laura S. Schneidau, Metairie, Counsel for defendant, Regal Insurance Company.
Before: WHIPPLE, FOGG, JJ. and BECNEL, J. pro tempore[1].
WHIPPLE, J.
In this wrongful death and survival action, plaintiffs, Mary Bel, Linda Mire and Carolyn Heard, appeal the trial court's judgment, granting the motion for summary *967 judgment filed by defendant, State Farm Mutual Automobile Insurance Company ("State Farm") and declaring that plaintiffs' total potential recovery against State Farm for the wrongful death and survival claims arising out of the death of Douglas Bel is limited to the "per person" limit of State Farm's policy. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
This matter arises out of an automobile accident which occurred on May 3, 1997 on Louisiana Highway 190 in St. Tammany Parish. Douglas Bel was a pedestrian crossing Hwy. 190 when he was struck and killed by a vehicle driven by Melinda LeBlanc. Mr. Bel's wife, Mary Bel, and his adult daughters, Linda Mire and Carolyn Heard, instituted this action, asserting a survival action and wrongful death claims. One of the named defendants was State Farm, the uninsured/underinsured motorist carrier of Douglas and Mary Bel.
State Farm filed a motion for summary judgment, asserting that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law, dismissing plaintiffs' demands against it. State Farm asserted that one "per person" policy limit of $100,000.00 applied to all claims asserted by plaintiffs arising out of Mr. Bel's death, i.e., the survival action and the individual wrongful death claims. State Farm further contended that the $100,000.00 per person limit had been tendered to plaintiffs as a result of their claims for the death of Mr. Bel. Thus, State Farm argued, the maximum benefits payable under the policy had already been paid, and State Farm was entitled to judgment, dismissing plaintiffs' claims against it.
In support of its motion for summary judgment, State Farm introduced its policy and asserted that, under the terms of the policy, recovery by plaintiffs was limited to the per person limit of $100,000.00. State Farm further contended that wrongful death and survival claims made by surviving family members of a decedent "are derivative in Louisiana and do not permit access by the multiple claimants into the `per accident' or $300,000 limits."
Plaintiffs, on the other hand, contended that the survival action and wrongful death claims were separate and distinct, with three separate individuals suffering separate and distinct injuries. Thus, plaintiffs contended, the separate injuries to the three statutory beneficiaries triggered the "per accident" limit of $300,000.00.
Finding that the claims asserted by plaintiffs were derivative actions, the trial court concluded that the "per person" limit applied to all claims. Accordingly, the trial court rendered judgment in favor of State Farm, finding that recovery against State Farm for the survival action together with all wrongful death actions asserted by plaintiffs was limited to the "per person" limit of State Farm's policy, rather than the "per accident" limit.[2] From this judgment, plaintiffs appeal.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. *968 Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996, the legislature amended LSA-C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA, Inc., 29,835, pp. 4-5 (La.App. 2nd Cir.9/24/97), 699 So.2d 1149, 1152; Hayes v. Autin, 96-287, p. 6 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
In 1997, by Act No. 483, the legislature again amended LSA-C.C.P. art. 966 to incorporate the federal summary judgment analysis. Under the amended version of LSA-C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967; Berzas, 29,835 at p. 8, 699 So.2d at 1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate. Sanders, 96-1751 at p. 7; 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir. 1993).
On appeal, plaintiffs contend that the trial court erred as a matter of law in concluding that wrongful death claims are derivative, and, as such, the multiple claimants herein asserting these claims together with a survival action are limited in their recovery to the "per person" limit of the State Farm policy. Plaintiffs argue that the survival action and the wrongful death claims are separate and distinct causes of action. Further, plaintiffs assert that the provisions of the State Farm policy do not limit recovery herein to the "per person" limit.

Wrongful DeathDerivative or Independent Cause of Action?
Recently, in Walls v. American Optical Corporation, 98-0455, pp. 14-16 (La.9/8/99), 740 So.2d 1262, 1273-1274, the Louisiana Supreme Court confirmed that survival actions and wrongful death actions are separate and distinct causes of action. As the Court enunciated, the wrongful death action is not a derivative cause of action. Rather, it is an independent and distinct cause of action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim's death. Walls, 98-0455 at p. 15, 740 So.2d at 1274.
The survival action, authorized by LSA-C.C. art. 2315.1, comes into existence simultaneously with the existence of the tort and is transmitted to the statutory beneficiaries upon the victim's death. It permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. Boullt v. State Farm Mutual Automobile Insurance Co., 99-0942, p. 8 (La.10/19/99), 752 So.2d 739, 743-744; Walls, 98-0455 at p. 14, 740 So.2d at 1273. Conversely, the wrongful death action, authorized by LSA-C.C. art. 2315.2, does not arise until the victim dies, and it compensates the statutory beneficiaries for their own individual injuries that occur at the moment of the victim's death and thereafter. Boullt, 99-0942 at p. 8, 752 So.2d at 744; Walls, 98-0455 at p. 14, 740 So.2d at 1273. The elements of damage *969 for wrongful death are loss of love, affection, companionship, and support, and medical and funeral expenses. Bergeron v. Blake Drilling & Workover Company, Inc., 599 So.2d 827, 845 (La.App. 1st Cir.), writs denied, 605 So.2d 1117, 1119 (La.1992); Hampton v. Rubicon Chemicals, Inc., 579 So.2d 458, 469 (La.App. 1st Cir.1991). Additionally, the courts have allowed the award to plaintiffs in wrongful death actions to include damages for their mental pain, suffering and distress resulting from the death. Bergeron, 599 So.2d at 845.
On appeal, State Farm acknowledges that, in view of the Supreme Court's pronouncements in Wall, its earlier argument that plaintiffs' wrongful death claims were derivative cannot stand. Nonetheless, State Farm argues that, given the specific provisions of its policy, the trial court was still correct in its conclusion that plaintiffs' total recovery is limited to the "per person" limit of its policy.
We agree with State Farm that the Supreme Court's pronouncement in Wall, i.e., that wrongful death claims are not derivative of the direct tort victim's injuries, does not end our analysis herein. The nature of a claim as a derivative or independent cause of action does not necessarily dictate whether insurance coverage is provided under the "per person" versus "per accident" limit. See Ferrell v. Fireman's Fund Insurance Co., 96-3028, p. 11 (La.7/1/97), 696 So.2d 569, 576 (Although loss of consortium claims are derivative, extent of coverage is nonetheless governed by the language of the policy); see also Crabtree v. State Farm Insurance Co., 93-0509, p. 7 (La.2/28/94), 632 So.2d 736, 741 (Court rejected position that a claim would fall within the single person policy limit merely because a claim "resulted from" bodily injuries to another. Rather, the language of the policy governs coverage). As noted by the Supreme Court in Ferrell, because an insurance policy is a contract between the parties, and the parties are free to contract regarding the extent of coverage contained therein, reference must be made to the language of the policy to determine the extent of coverage. Ferrell, 96-3028 at p. 11, 696 So.2d at 576; see also Crabtree, 93-0509 at p. 7, 632 So.2d at 741.
Thus, whether plaintiffs herein may recover under the "per accident" limit as opposed to the "per person" limit depends on the specific language of State Farm's policy.

Coverage Afforded under the State Farm Policy
Plaintiffs further contend that the trial court erred in limiting their recovery to the "per person" limit of State Farm's policy, because the language of the policy does not require this result.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts as set forth in the Civil Code. Crabtree, 93-0509 at p. 6, 632 So.2d at 741. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. Crabtree, 93-0509 at p. 6, 632 So.2d at 741.
An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. Crabtree, 93-0509 at p. 6, 632 So.2d at 741. If after applying the general rules of construction an ambiguity remains, the ambiguous provision is to be construed against the insurer who issued the policy and in favor of the insured. *970 Interstate Fire & Casualty Co., 93-0911 at p. 6, 630 So.2d at 764.
The pertinent provisions of the policy provide as follows:

Bodily Injurymeans physical injury, sickness or disease sustained by a person. This includes death that results from it.

Bodily Injury does not include emotional distress or mental anguish unless it arises out of actual physical injury to a person.

* * *
Limits of Liability Under Coverage U [UM Coverage]
1. The amount of coverage is shown on the declarations page under "Limits of LiabilityUEach Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury, including bodily injury, and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
Plaintiffs contend that under the policy language defining "bodily injury," there was bodily injury to more than one person herein. Plaintiffs argue that although the policy provides that "bodily injury" does not include emotional injury claims unless they arise out of actual physical injury, the policy only requires an injury to "a person" as opposed to physical injury to the person who is seeking damages for emotional distress. They further note that there was physical injury to "a person" in the instant case, i.e., Douglas Bel.
Additionally, plaintiffs point out that "bodily injury" under the policy is not limited to physical injury, but also includes "sickness" or "disease." They further note that in Crabtree, the Supreme Court found the definition of "bodily injury" in the State Farm policy at issue therein to be ambiguous and, thus, interpreted it to include severe and debilitating mental pain and anguish. For these reasons, plaintiffs argue that it is clear that each of their separate and distinct wrongful death claims constitutes "bodily injury" as defined in the policy. Consequently, they argue that the "per accident" limit applies.
State Farm, on the other hand, contends that even if a wrongful death claim were to be considered "bodily injury" under the terms of its policy, the policy language nonetheless limits recovery for bodily injury to a person, resulting from the bodily injury to another, to the "per person" limits. Specifically, State Farm points to the provision of its policy which states that "bodily injury to one person" includes "all injury, including bodily injury, and damages to others resulting from this bodily injury." Thus, State Farm contends, even if plaintiffs' wrongful death claims constitute "bodily injury," these claims nonetheless all result from the "bodily injury" to Douglas Bel. As such, State Farm argues, all of these claims are included under the policy definition of "bodily injury to one person" and must, consequently, be satisfied out of the "per person" limit.
State Farm further notes that the language in its policy at issue in Crabtree differed from the language of the policy herein. Specifically, State Farm contends that the policy language now used in its policies reflects an amendment of its previous policy language to incorporate the language as suggested by the Supreme Court in Crabtree and unambiguously defines "bodily injury to one person" to include all of the claims asserted herein.
In Crabtree, the Supreme Court considered whether a wife's mental anguish suffered upon witnessing an injury to her husband constituted a separate bodily injury under the State Farm automobile insurance policy therein, thereby entitling the wife to her own "per person" policy limit *971 subject to the aggregate "per accident" limit. Crabtree, 93-0509 at p. 1, 632 So.2d at 737-738. The Court held that the wife's Lejeune[3] claim constituted "bodily injury" under the policy and that the policy definition of "bodily injury to one person" did not encompass the Lejeune claim. Thus, the Court concluded that the wife's Lejeune claim was not subject to the single person limit applicable to her husband's claim. Crabtree, 93-0509 at pp. 4-12, 632 So.2d at 740-745.
In reaching this conclusion, the Court analyzed the policy's definition of "bodily injury to one person," which included "all injury and damages to others resulting from this bodily injury." Crabtree, 93-0509 at p. 8, 632 So.2d at 742. In concluding that the wife's Lejeune claim was not encompassed in the definition of "bodily injury to one person," the Court stated as follows:
In arguing [the wife's] Lejeune claim "resulted from" [the husband's] bodily injuries and therefore falls within the per person policy limits even if [the wife's] mental anguish constitutes "bodily injury," State Farm in effect construes the definition of "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury."
* * *
If State Farm had intended "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury," the policy would have so provided.
* * *
[W]e conclude the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" does not reasonably encompass bodily injury to others under the single person limit. Crabtree, 93-0509 at pp. 8-9, 632 So.2d at 742.
Because the Court concluded that the wife's Lejeune claim was a separate "bodily injury" under the policy provisions, it further concluded that her claim was not encompassed within the definition of "bodily injury to one person," which would have limited her recovery to the same "per person" limit as her husband for his personal injuries. Consequently, she was entitled to seek recovery from a separate "per person" limit. Crabtree, 93-0509 at p. 9, 632 So.2d at 743.
However, we note that the policy language at issue herein differs from the language at issue in Crabtree. Specifically, the State Farm policy herein defines "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury," the specific language that the Supreme Court in Crabtree suggested would be necessary to limit recovery for injuries to multiple individuals all resulting from the bodily injury of one person to a single "per person" limit. Moreover, plaintiffs' contention that their wrongful death claims constitute "bodily injury" under the terms of the policy and therefore entitle them to the "per accident" limit focuses on the definition of "bodily injury" alone, and ignores the definition of "bodily injury to one person" set forth in the policy herein.
Consequently, in construing the policy as a whole, rather than construing one portion thereof separately at the expense of disregarding another, we are constrained to conclude that even if plaintiffs' wrongful death claims constitute "bodily injury" under the policy, the policy nonetheless limits their recovery to the same "per person" limit from which Mr. Bel's *972 survival claim must be satisfied. In broadly defining "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury," we are bound to conclude that State Farm has limited its exposure herein to a single "per person" limit.[4]

CONCLUSION
For the above and foregoing reasons, the February 12, 1999 judgment of the trial court, granting State Farm's motion for summary judgment and declaring that all survival or wrongful death laims arising out of the injuries and death of Douglas Bel are limited to the "per person" limits of State Farm's policy, is affirmed. Costs of this appeal are assessed against plaintiffs, Mary Bel, Linda Mire and Carolyn Heard.
AFFIRMED.
NOTES
[1] Judge Mary Hotard Becnel of the Fortieth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The trial court, finding no reason for delay, specifically designated the judgment as final for purposes of immediate appeal, pursuant to LSA-C.C.P. art. 1915.
[3] In Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), the Supreme Court recognized a plaintiff's right to recover damages for severe mental pain and anguish caused by witnessing serious injury to a close relative. The Louisiana Legislature subsequently codified Lejeune in LSA-C.C. art. 2315.6.
[4] While we have grave concerns about the fairness and public policy implications of the policy language herein, which limits separate and independent causes of action to a single "per person" limit, we conclude that State Farm had the ability to limit its exposure. In Carroll v. State Farm Insurance Company, 519 So.2d 265, 266-267 (La.App. 5th Cir.), writ denied, 520 So.2d 756 (La.1988), the Fifth Circuit found no public policy prohibition against an insurer limiting recovery for a loss of consortium claim to the same "per person" limit from which the primary tort victim recovered. In that case, the husband of the tort victim sought damages as a second person sustaining bodily injury as a result of his wife's accident. He averred that because he had been forced to take over his wife's household duties, he had aggravated a previous back injury, for which he sought recovery under a separate "per person" limit. Because the wife's injuries had exceeded the $10,000.00 per person limit, the insurer had paid the wife the "per person" limit and denied the husband's claim for additional recovery under the policy. Carroll, 519 So.2d at 266.

The husband argued that by relegating his recovery to the same "per person" limit as his wife, the insurer was in effect precluding recovery for a class of damages provided for in LSA-C.C. art. 2315, i.e., loss of consortium. The Fifth Circuit disagreed, noting that an insurer is entitled to place limits on its coverage. The court further noted that the policy therein did not necessarily disallow a claim for loss of consortium, as long as the total damages arising from injury to one person, including damages for loss of consortium, did not amount to more than the "per person" limit. Carroll, 519 So.2d at 267.